710 So.2d 831 (1998)
STATE of Louisiana
v.
Kevin JARVIS.
No. 97-KA-1174.
Court of Appeal of Louisiana, Fifth Circuit.
April 9, 1998.
Manina D. Dubroca, Luling, for defendant-appellant.
Harry J. Morel, Jr., District Attorney, Louis G. Authement, Assistant District Attorney, Hahnville, for plaintiff-appellee.
Before GRISBAUM, C.J., and BOWES and CANNELLA, JJ.
GRISBAUM, Chief Judge.
In this criminal appeal, the defendant, Kevin Jarvis, appeals his conviction of armed robbery, La. R.S. 14:64. We affirm.

ASSIGNMENTS OF ERROR
Defendant assigns as error the following, to-wit:
1. The court erred in failing to rule that the defendant's arrest by St. Charles Parish authorities in Lafourche Parish-that *832 took place without even informing Lafourche Parish officials-was illegal.
The court erred in failing to suppress the identification made in-court before trial by the victim of the robbery where the victim testified that he was unsure that the defendant was the perpetrator where the victim's only other opportunity to identify the defendant was a one-on-one identification.
3. The court erred in refusing to permit the defendant access to the transcript of the hearing on a pretrial motion to suppress the identification, and to utilize it in questioning the victim, where the State had used the transcript to question the witness about his recollection of his earlier testimony. The court then compounded its error by refusing to permit the defense to question the witness after the State had rested.
Defendant-Appellant's Original Brief at p. 8.

FACTS AND PROCEDURAL HISTORY
On the night of February 8, 1997, the minor victim, David Perrilloux, and four of his friends were returning home from a Mardi Gras parade. They stopped at a Chevron station near their home in Des Allemandes, in St. Charles Parish, to buy cigarettes. The clerk at the station refused to sell cigarettes to either David Perrilloux or his friend, David Schubert. David Schubert asked another customer in the store to buy the cigarettes for him, but the clerk refused to sell the cigarettes to the other customer as well. David Schubert then exited the station and tried to persuade the occupants of a van parked in front of the station to buy the cigarettes. David Perrilloux testified that one of the males from the van agreed to buy cigarettes and beer for the boys. Perrilloux identified this man as being "bright skinned" with brown hair "sticking up" but could not tell if the man was black or white. This man told Perrilloux to walk around to the side of the store so the clerk would not see the money being exchanged. Perrilloux and Schubert walked around to the side of the store, accompanied by the "bright skinned guy" and another male. When all four turned the corner, the "bright skinned" man put a gun to the side of Perrilloux's head. When Schubert saw the gun, he took off running. Perrilloux testified that, while the gun was being held to his head, the other man took $70 from Perrilloux's wallet. The "bright skinned" man then hit Perrilloux in the head twice and the two perpetrators then ran off.
The incident was reported to the St. Charles police, who sent a "BOLO" or "Be On the Look Out" to the surrounding parishes. In response to the BOLO, the Lafourche Parish officers stopped a van matching the description with four or five people still in the van. Later that evening, Perrilloux and Schubert accompanied the St. Charles police to Lafourche Parish, where a van had been stopped, to attempt to identify the perpetrators of the crime. However, once arriving at the van, Perrilloux told the police that the people in the van had been at the scene but the man who had robbed him was not one of the men standing besides the stopped van. Therefore, they headed back to St. Charles Parish. Deputy Troy Becnel, a St. Charles officer who was driving the boys, testified that, on their way back, they passed a hitchhiker, whom the boys identified by the light of the police car's headlights, as the perpetrator of the robbery. The hitchhiker was later identified as Kevin Jarvis. Although still in Lafourche Parish, Deputy Becnel arrested the defendant, without any assistance from Lafourche Parish officers, and, subsequent to the arrest, transported him to St. Charles Parish. However, at trial, Deputy Becnel told the jury that he had no jurisdiction or authority to arrest the defendant in Lafourche Parish. Furthermore, defendant was never booked in Lafourche Parish nor was there any communication with Lafourche Parish officers about the defendant's arrest.
Perrilloux's positive identification of Jarvis as the perpetrator of the robbery was corroborated by Schubert. Fawn Luquette and Misty Colangelo, who were with Perrilloux and Schubert on the night of the incident, both testified at trial that Kevin Jarvis was the man they each saw accompany their friends to the back of the store.
On March 7, 1997, the St. Charles Parish District Attorney's office filed a bill of information *833 charging the defendant, Kevin Jarvis, with armed robbery, La. R.S. 14:64. Defendant was arraigned on March 12, 1997, and pled not guilty. The trial court heard and denied defendant's motion to suppress the evidence and identification. After a trial before a jury of 12 on May 15 and May 16, 1997, the jury, on May 16, 1997, returned a 10-2 verdict of guilty as charged. On August 14, 1997, defendant was sentenced to 12 years at hard labor without benefit of parole, probation, or suspension of sentence. Defendant's motion to reconsider sentence was denied on September 16, 1997. Defendant timely filed an appeal.

LAW AND ANALYSIS

Assignment of Error One
Defendant-appellant first contends that his arrest was illegal because it occurred outside the St. Charles Parish deputies' territorial jurisdiction. At first glance, it is not apparent which trial court ruling the defendant-appellant asks us to review. In the trial court, defendant-appellant raised the issue of his arrest by a motion to suppress the evidence, stating to the trial court that he wished to suppress the arrest. However, the specific issue of jurisdiction to arrest was not brought up in his written motion to suppress the evidence. Because the trial court, nevertheless, ruled on the defendant-appellant's challenge of his arrest, in the context of the suppression motion, we determine that this challenge is properly before our Court.
There is no dispute that defendant-appellant was arrested in Lafourche Parish by a member of the St. Charles Parish Police Office, Deputy Becnel. The officer was aware that he had no police authority to arrest the defendant-appellant in Lafourche Parish and further testified that no Lafourche Parish officers assisted in the arrest. Moreover, there was no communication with Lafourche Parish officers about the defendant-appellant's arrest. Our statutory law and jurisprudence allows a peace officer to enter another jurisdiction in this State and make an arrest; however, only officers in close pursuit are authorized to leave their territorial jurisdiction for the purpose of an effective arrest. La.Code Crim. P. art. 213; State v. Bickham, 404 So.2d 929 (La.1981); State v. Washington, 444 So.2d 320 (La.App. 1st Cir.1983), writ denied, 445 So.2d 450 (La.1984). Furthermore,
When an arrest under a warrant occurs in a parish other than that in which the alleged offense was committed, the person arrested shall be booked and imprisoned in the parish where he was arrested until he gives bail or is transferred to the parish where the offense is alleged to have been committed.
La.Code Crim. P. art. 207.
We have previously held that officers who began the pursuit of a defendant in their territorial jurisdiction and pursued the fleeing vehicle beyond that jurisdiction were justified in stopping the vehicle. State v. Owens, 565 So.2d 1062 (La.App. 5th Cir.1990). But here, the record does not reflect that Deputy Becnel was in pursuit of defendant-appellant but, rather, merely happened upon defendant-appellant on the side of the road. Accordingly, the defendant-appellant should have been arrested with the assistance of Lafourche Parish officers and booked in Lafourche Parish where he was arrested. Although this appears to be an illegal arrest, an illegal arrest does not, in and of itself, void a subsequent conviction. State v. Brown, 395 So.2d 1301 (La.1981).
La.Code Crim. P. art. 214 states that "[a] private person may make an arrest when the person has committed a felony, whether in or out of his presence." Our jurisprudence has noted that where a defendant was arrested for a felony, La.Code Crim P. arts. 213(3) and 214 authorize private citizens and peace officers alike to arrest for felonies not committed in their presence. State v. Washington, 444 So.2d 320 (La.App. 1st Cir.1983), writ denied, 445 So.2d 450 (La.1984). The court, in Washington, also held that "even if the officers were acting only as private citizens when they effected the arrest, it was valid under Louisiana statutory law." Id.
It is important to note that Deputy Becnel and the victims went into Lafourche Parish, only hours after the robbery in the first instance, to identify a van, which had been stopped in response to an alert sent by the St. Charles Parish Sheriff's Office. Had defendant-appellant *834 been found in the van, then the arrest would had been valid, because the proper authorities were present at the van. Deputy Becnel was returning to St. Charles Parish and had not yet entered his jurisdiction when he happened to find defendant-appellant alongside the road in a remote area. Because the two victims were in the car and were able to identify defendant-appellant, Deputy Becnel arrested him and transported him back to St. Charles Parish. In the Washington case, Lafourche Parish police offers began trailing a defendant soon after a robbery was committed in that parish; however, the officers arrested defendant in St. Charles Parish two hours after the robbery and within five and one-half miles of the robbery location. Here, although Deputy Becnel was not in "hot pursuit," nor did he have the authority to arrest defendant-appellant in Lafourche Parish in his official capacity, we find that the officer properly arrested defendant-appellant, as a private citizen, as supported under our statutory scheme. Therefore, this assignment of error is not sufficient to reverse defendant-appellant's conviction.

LAW AND ANALYSIS

Assignment of Error Two
Defendant-appellant next argues that the trial court erred by failing to suppress the identification. At a hearing on defendant-appellant's motion to suppress the identification on April 23, 1997, the trial court heard the testimony of the victim, Perrilloux, and, at the conclusion of the testimony, denied Jarvis' motion. Defendant-appellant was first identified by the victim in a "one-on-one" encounter, which occurred within hours of the crime. Although this type of confrontation is generally not favored, it is permissible when justified by the overall circumstances, particularly when the accused is apprehended within a relatively short period of time after the occurrence of the crime and has been returned to the crime scene. State v. Jackson, 96-661 (La.App. 5 th Cir. 4/9/97), 694 So.2d 440, writs denied, 97-1050 (La.10/13/97), 703 So.2d 609 and 97-1255 (La.10/13/97), 703 So.2d 612. These identifications have been upheld because prompt confrontation between the defendant and the victim promotes fairness by assuring the reliability of the identification (while the victim's memory is fresh) and the expeditious release of innocent suspects. State v. Robinson, 404 So.2d 907 (La.1981).
Although defendant-appellant was apprehended shortly after the occurrence of the crime, the victim, Perrilloux was not returned to the crime scene. Furthermore, at the motion to suppress hearing, Perrilloux expressed some doubt as to his identification of the defendant-appellant. However, in determining whether a ruling on a defense motion to suppress was correct, an appellate court is not limited to the evidence adduced at the hearing on the motion, but, rather, the court may consider pertinent evidence received at trial. State v. Seward, 509 So.2d 413 (La.1987); State v. Scott, 573 So.2d 556 (La.App. 5th Cir.1991). At trial, the victim, Perrilloux, had no doubt regarding his identification of the defendant-appellant. This identification was further supported at trial by the testimony of Schubert, who was with Perrilloux, and the testimonies of Luquette and Colangelo, who saw defendant accompany Perrilloux and Schubert to the back of the store just before the robbery was committed. In light of these testimonies presented at trial and considering that when there is conflicting testimony in a criminal case and the credibility of the witnesses is a matter within the sound discretion of the trial court, see State v. Patterson, 473 So.2d 363 (La.App. 5th Cir.1985), we find that the trial court correctly denied defendant-appellant's motion to suppress the identification. It is not the function of appellate courts to assess credibility of witnesses or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. This assignment of error is also without merit.

LAW AND ANALYSIS

Assignment of Error Three
Finally, defendant-appellant argues that the trial court erred by refusing his request to use the transcript of the hearing on the motion to suppress the identification at trial. Specifically, defendant-appellant claims that since the State utilized the transcript in order for Perrilloux to refresh his *835 memory while being examined, the defense has the right to examine the transcript and use it to further question Perrilloux. In order to reverse a conviction on the claim of improperly excluded evidence, a reviewing court must find that the trial court was wrong in excluding the evidence and that defendant was prejudiced by the error. State v. Walker, 558 So.2d 1346 (La.App. 4th Cir.1990). Ordinarily, when a document is used to refresh a witness' memory, La.Code Evid. art. 612 provides a right to the adverse party "to inspect [the document], to examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness." Because Perrilloux's memory was refreshed by use of the transcript and he testified reading from the transcript, it appears that defendant-appellant has a right under La.Code Evid. art. 612 to review the transcript.
However, La.Code Evid. art. 613 requires a distinct foundation be laid before evidence of a prior inconsistent statement is admissible to impeach a witness. The witness' attention must be fairly directed to the particular statement and he must be given the opportunity to admit the "fact" of his prior inconsistent statement. State v. Mayeux, 94-105 (La.App. 5th Cir. 6/28/94), 639 So.2d 828. However, "[i]f the witness fails to distinctly admit the particular statement, the extrinsic evidence of the prior inconsistent statement is admissible." Id. at 833-34 (citation omitted).
Here, the record reflects that Perrilloux admitted that his prior testimony was inconsistent with his trial testimony. When a witness admits making a prior inconsistent statement, the prior statement is not independently admissible. State v. Sullivan, 596 So.2d 177 (La.1992), rev'd on other grounds, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Because we determine that there is no reasonable probability that the exclusion of the evidence in question might have contributed to the conviction and since the witness admitted that the prior sentence was inconsistent, exclusion of the evidence in this instance would not have prejudiced the defendant-appellant. Therefore, we find that the trial court did not err by refusing to admit the transcript into evidence.

ERRORS PATENT REVIEW
The record was reviewed for errors patent, according to La.Code Crim. P. art. 920; State v. Godejohn, 425 So.2d 750 (La.1983); State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). The review reveals no errors patent.
For the reasons assigned above, the defendant-appellant's conviction is hereby affirmed.
AFFIRMED.